IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ARX FIT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| OUTSTRIP EQUIPMENT, LLC; CRAZY | § | 1:18-CV-848-RP |
| TRAIN, LLC; ROUND TO FIT, LLC; | § | |
| RANDY RINDFLEISCH; and ARIEL | § | |
| HUSKINS; | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant and Counter-Plaintiff Crazy Train, LLC's ("Crazy Train")

Motion for a Preliminary Injunction, (Dkt. 39), based on its counterclaim against Plaintiff and

Counter-Defendant ARX Fit, LLC ("ARX"). The parties filed responsive briefing, (Dkts. 47, 50),

and the Court held a hearing on the motion, (Dkt. 107). Having considered the briefing, the

arguments made at the hearing, the evidence, and the relevant law, the Court will deny the motion.

## I. BACKGROUND

ARX is an Austin company that makes and sells two adaptive-resistance exercise machines:

the Alpha and the Omni. (ARX Am. Compl., Dkt. 29. at 2, 6). Randy Rindfleisch ("Rindfleisch")

was a co-founder of ARX and remained a part-owner of the company until 2016. (*Id.* at 2, 5). He is

the inventor on two patents for adaptive-resistance exercise equipment, which he later assigned to

his company Crazy Train, LLC ("Crazy Train"). (*Id.* at 2, 5).

After Rindfleisch left ARX, the company licensed his patents for about six months, at which

point it decided that its exercise machines did not infringe the patents and terminated the two patent

licenses. (*Id.* at 5–6). Rindfleisch then founded Defendant Outstrip Equipment, LLC ("Outstrip")

with Defendant Ariel Huskins ("Huskins")—who formerly leased exercise machines from ARX—to

start making competing adaptive-resistance exercise machines. (*Id.* at 6–8). After Outstrip sold or leased a pair of machines to Austin customers, (*id.*), ARX sued Rindfleisch, Huskins, Outstrip, and Crazy Train, seeking a declaration that its exercise machines do not infringe Rindfleisch's patents and alleging that each defendant infringed its software copyrights and tortuously interfered with its business. (*Id.* at 16–21).

In response, Crazy Train filed a counterclaim against ARX for infringing one of Rindfleisch's patents: U.S. Patent 8,105,206 (the "'206 Patent"). (Ans., Dkt. 38, at 15). Based on this counterclaim, Crazy Train moved for a preliminary injunction, asking this Court to enjoin ARX from selling the Alpha or the Omni for the duration of this litigation. (Mot., Dkt. 39, at 10). On July 22, 2019, the Court held a hearing on the motion. (Dkt. 107).[1]

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Here, the Court's analysis begins and ends with its finding that Crazy Train has not met its burden to show that it will be irreparably harmed in the absence of an injunction.

---

[1] ARX sought leave to file a sur-reply in opposition to Crazy Train's motion. (Dkt. 53). Because none of the arguments raised in ARX's sur-reply are relevant to the disposition of Crazy Train's motion, the Court will deny ARX's motion as moot.

The party seeking a preliminary injunction must prove that irreparable harm is likely, not merely possible. *Winter*, 555 U.S. at 22. Irreparable harm "consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008). There is no longer any presumption of irreparable harm based on a finding of substantially likely infringement at this stage. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).[2] "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

In its motion, filed in January, Crazy Train admitted that it was not then selling any exercise machines. (Mot., Dkt. 39, at 9). But at that time, it "plan[ned] to enter the adaptive resistance exercise machine market" in April 2019. (*Id.*). That market, Crazy Train argued, is a "fledgling" one: only ARX and Outstrip sell adaptive-resistance machines, and once a health facility buys one, it will not replace the machine for years. (Rindfleisch Aff., Dkt. 41, at 3). Crazy Train therefore asked to enjoin ARX's sales so that when it started selling machines in April, it would not be shut out of a cornered market. (Mot., Dkt. 39, at 9).

That was Crazy Train's position in January. In May, Rindfleisch filed an affidavit conceding that Crazy Train was still not selling any exercise machines. (Rindfleisch Aff., Dkt. 83, at 2). According to Rindfleisch, Crazy Train showed a demo machine at a fitness conference in April and expected to "be able to accept order for its machines within . . . several weeks" of May 3. (*Id.*).

Several weeks passed, and several more, before the preliminary injunction hearing held on July 22, 2019. (Dkt. 107). At that hearing, Crazy Train offered no evidence that it had begun taking orders for its exercise machines or when it expected to be able to do so. It produced no evidence that it could produce machines to fill whatever orders it had received. And it produced no evidence

---

[2] Although the Court is skeptical of Crazy Train's likelihood of success on the merits at this stage, it assumes for the purposes of this order that Crazy Train is likely to succeed on the merits of its claim.

of what the market for its machines would be whenever it did begin selling them—for example, would it be selling machines in the same parts of the country as ARX? Asked to identify how soon Crazy Train would be able to sell exercise machines, counsel for Crazy Train could point only to the company's April demonstration of its model. There is no evidence that Crazy Train is even *participating* in the market for adaptive-resistance exercise machines, much less being shut out of that market by ARX.

In the hearing, Crazy Train argued that the machines ARX sells today nonetheless harm Crazy Train because the customers buying those machines will not be buying another adaptive-resistance exercise machine when Crazy Train is ready to sell them. ARX argues that this harm amounts to no more than lost sales, which can be reliably reduced to damages. (Resp., Dkt. 47, at 7 (citing *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009) ("Lost sales (without more) are presumed to be compensable through damages, so they do not require injunctive relief."))). Crazy Train responds that these lost sales also mean lost market share, which can affect its bottom line in ways that are more difficult to calculate. (Reply, Dkt. 50, at 5 (citing *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014))). But ARX is one of only two companies that currently make adaptive-resistance exercise machines, (Rindfleisch Aff., Dkt. 41, at 3), and if Crazy Train ultimately succeeds in this action, the result might be that ARX is permanently enjoined from selling its only two products. At the hearing, Crazy Train conceded that ARX's market share would not be an ongoing concern if ARX were unable to sell its adaptive-resistance machines. Because Crazy Train is not selling anything and can reduce any sales it loses during the pendency of this litigation to damages, it has not carried its burden to show that it is likely to be irreparably harmed in the absence of a preliminary injunction. A preliminary injunction is not warranted.

### III. CONCLUSION

For these reasons, **IT IS ORDERED** that Crazy Train's motion, (Dkt. 39), is **DENIED**.

ARX's motion to file a related sur-reply, (Dkt. 53), is **DENIED AS MOOT**.

**SIGNED** on July 29, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE